[Cite as *In re G.C.J.*, 2019-Ohio-185.]

# IN THE COURT OF APPEALS

## ELEVENTH APPELLATE DISTRICT

## PORTAGE COUNTY, OHIO

| | | |
|---|---|---|
| IN THE MATTER OF: | : | **O P I N I O N** |
| G.C.J., ABUSED AND DEPENDENT | : | |
| CHILD AND T.L.L., DEPENDENT CHILD | | **CASE NOS.** 2018-P-0071 |
| | : | 2018-P-0072 |
| | | 2018-P-0074 |
| | : | 2018-P-0075 |
| | : | |

Appeals from the Portage County Court of Common Pleas, Juvenile Division, Case Nos. 2018 JCF 557 and 2018 JCF 558.

Judgment: Affirmed in part, reversed in part, and remanded.

*Victor V. Vigluicci,* Portage County Prosecutor, *Brandon J. Wheeler and Gregory Thomas Barton,* Assistant Prosecutors, 241 South Chestnut Street, Ravenna, OH 44266 (For Appellee, Portage County Department of Job and Family Services).

*Brendon J. Kohrs,* 3580 Darrow Road, Stow, OH 44224 (For Appellant, Daniel Lorincz).

*Shubhra N. Agarwal,* 3732 Fishcreek Road, #288, Stow, OH 44224 (For Appellant, Jennifer Jackson).

*Melissa M. Folan,* Rosenberg and Associates, 533 East Main Street, Ravenna, OH 44266 (Guardian ad litem for G.C.J.).

*Gerrit M. Denheijer,* Giulitto Law Office, LLC, 222 West Main Street, P.O. Box 350, Ravenna, OH 44266 (Guardian ad litem for T.L.L.).

CYNTHIA WESTCOTT RICE, J.

{¶1} Appellants, Jennifer Jackson, mother of T.L.L. (D.O.B. 2/10/16), and G.C.J.

(D.O.B. 9/17/17); and Daniel Lorincz, father of the children, have filed appeals from the

judgment of the Portage County Court of Common Pleas, Juvenile Division, granting permanent custody of the children to appellee, Portage County Department of Job and Family Services ("PCDJFS"). The cases were subsequently consolidated. At issue is whether the trial court committed reversible error when it proceeded to final hearing for permanent custody six days after service by publication was completed on father, in alleged violation of Juv.R. 18(D) and Juv.R. 16(A). For the reasons discussed in this opinion, we affirm the judgment as it pertains to mother, and reverse the judgment as it pertains to father and remand the matter for further proceedings.

{¶2} T.L.L. was removed from his parents' care on July 26, 2016. After an adjudicatory hearing, he was adjudicated dependent due to his parents' substance abuse issues. A dispositional hearing was held in October 2016 and temporary custody of the child was granted to PCDJFS. A case plan was filed and made binding on the parties. After a hearing in January 2017, T.L.L. was returned to his mother's legal custody with an order of protective supervision granted to PCDJFS.

{¶3} In June 2017, PCDJFS filed a notice of emergency removal and a motion to modify dispositional order and notice of emergency modification of case plan following PCDJFS' emergency removal of the child as a result of a risk of imminent harm to the child. Two additional six-month extensions of temporary custody were subsequently granted and, on June 20, 2018, PCDJFS filed its motion for permanent custody. In July 2018, PCDJFS filed an amended complaint that alleged the child was abandoned by his parents, had been in the temporary custody of PCDJFS for 12 or more months of a consecutive 22-month period, that it would be in the child's best interest to be placed into

its permanent custody, and that the parents had failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the home.

{¶4} G.C.J. was removed from his mother's care on September 26, 2017. In November 2017, an order was entered concluding the child was abused and dependent due to the need for services to address appellant's substance abuse. After a dispositional hearing, temporary custody was granted to PCDJFS in December 2017. A case plan was filed and made binding on the parties. On June 20, 2018, PCDJFS filed its motion for permanent custody. PCDJFS alleged the child was abandoned by his parents, that it would be in the child's best interest to be placed into its permanent custody and that the parents had failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the home.

{¶5} Personal service was attempted on both parents and failed. Ultimately, mother was served, but father could not be located. As a result, notice by publication was issued on August 17, 2018. On the same day, an affidavit was filed by PCDJFS case worker Miranda Lewis, averring:

> {¶6} Affiant has made a diligent and reasonable effort to locate the aforesaid unknown Father's address by requesting information from relatives and by conducting a search through PCDJFS records. * * * [Father] can neither be found nor can a post office address be ascertained, nor can it be determined whether he is within the state of Ohio. Affiant further says that after making a reasonable effort has been unsuccessful in obtaining the name of last known address of said Father, and that a citation should be served on the said father by publication, as provided by Rule 16 of the Ohio Rules of Juvenile Procedure.

{¶7} The affidavit set forth father's last known address and further averred father could not be located at the same.

3

{¶8} On August 24, 2018, an employee of The Portage County Legal News, a daily newspaper of general circulation in Portage County, Ohio, filed an affidavit with the trial court averring that notice was published in the newspaper on August 23, 2018.

{¶9} A permanent custody hearing was held on August 29, 2018. Prior to its commencement, counsel for both parties objected to proceeding because seven days had not elapsed since service by publication on father was completed. The following exchanges took place:

{¶10} [Father's counsel]: Your Honor, the only real argument that I have or real discussion I have with the Court is in reference to service in reference to this case. I spoke with my client yesterday at 6:30 in the evening, and he indicated to me yesterday he didn't even know about the hearing let alone the trial.

{¶11} As I understand publication had to be done on him, and that publication as we understand was completed through the Portage County Legal News on August 23rd, which puts six days prior to today's trial date, not the seven days that I recall that the statue or rules require. This is really the only objection that I have in reference to going forward today.

{¶12} He indicated to me he was going to be here. I don't know why he's not. I did call back the number that he called me on this morning, heard some people in the background, but no one ever acknowledged me. I texted the number, still no response so I want to bring it to the Court's attention, indicate to the Court that I believe is an issue in reference to service and allow the Court to make a ruling.

{¶13} The Court: Okay. I'll overrule your objection.

{¶14} [Mother's counsel]: I would just concur in his Motion, I'm sure you will - -

{¶15} The Court: Piggy-back on it? I'll overrule your objection too.

{¶16} The matter proceeded to hearing after which the trial court made the requisite statutory findings under R.C. 2151.414(B)(1) and concluded it would be in the

best interests of the children to be placed in the permanent custody of PCDJFS. This consolidated appeal followed. We shall address father's assignment of error first. It provides:

{¶17} "The trial court committed reversible and plain error in granting the permanent custody to the Portage County Job and Family Services as service of permanent custody complaint was not completed prior to the trial date."

{¶18} Father initially contends that service by publication failed in this matter because: (1) PCDJFS did not file an affidavit prior to publication and (2) the case proceeded to hearing a mere six days after the proof of publication was filed with the court, both violations of Juv.R. 16. Appellant maintains that, in light of these defects, the trial court did not have jurisdiction to move forward.

{¶19} We first note that Juv.R. 16 service is not applicable to the underlying permanent custody proceedings. Rather, R.C. 2151.414(A)(1), governing the procedure relating to motions for permanent custody, provides:

{¶20} Upon the filing of a motion pursuant to section 2151.413 of the Revised Code for permanent custody of a child, the court shall schedule a hearing and give notice of the filing of the motion and of the hearing, in accordance with section 2151.29 of the Revised Code, to all parties to the action and to the child's guardian ad litem.

{¶21} The underlying motion, a motion for permanent custody, was filed pursuant to R.C. 2151.413. Thus, R.C. 2151.29 provides, in relevant part:

{¶22} Whenever it appears by affidavit that after reasonable effort the person to be served with summons cannot be found or the person's post-office address ascertained, whether the person is within or without a state, the clerk shall publish such summons once in a newspaper of general circulation throughout the county. The summons shall state the substance and the time and place of the hearing, *which shall be held at least one week later than the date of the publication*. A copy of the summons and the complaint,

5

indictment, or information shall be sent by registered or certified mail to the last known address of the person summoned unless it is shown by affidavit that a reasonable effort has been made, without success, to obtain such address.

{¶23} A copy of the advertisement, the summons, and the complaint, indictment, or information, accompanied by the certificate of the clerk that such publication has been made and that the summons and the complaint, indictment, or information have been mailed as required by this section, is sufficient evidence of publication and mailing. *When a period of one week from the time of publication has elapsed, the juvenile court shall have full jurisdiction to deal with such child as provided by sections 2151.01 to 2151.99 of the Revised Code.* (Emphasis added).

{¶24} Although R.C. 2151.29 appears to address only "summons" in relation to service by publication, R.C. 2151.414(A)(1), by its specific mandate, contemplates the same process be utilized for service of notice of a hearing on termination.

{¶25} Moreover, Juv.R. 18(A), which governs time computation, provides, in relevant part: "In computing any period of time prescribed or allowed by these rules, by the local rules of any court, by order of court, or by any applicable statute, the date of the act or event from which the designated period of time begins to run shall not be included."

{¶26} With the foregoing in mind, the case proceeded to hearing on August 29, 2018. Service by publication was completed on August 23, 2018. *See* Juv.R. 16(A). ("The publication shall be published once and service shall be complete on the date of publication.") Pursuant to Juv.R. 18(A), accordingly, the time to measure the "one week" period set forth under R.C. 2151.29 commenced on August 24, 2018. Using this metric, the hearing took place on the sixth day in contravention of the statute.

{¶27} The statutory language mandates the hearing be held one week from the time of publication to invoke the court's "full jurisdiction." It is unclear what the phrase "full jurisdiction" means. The phrase necessarily presupposes the trial court possesses

some jurisdiction prior to the expiration of the week, perhaps jurisdiction over the subject matter as well as the persons of the parties. It is not entirely clear what additional jurisdictional triggers would be necessary to proceed to hearing. Notwithstanding the strange dichotomy created by the phrase "full jurisdiction," it would appear the legislature, perhaps inartfully, used the terminology to create a substantive protection that affords a party properly served by publication at least one week, regardless of the circumstances, to prepare for a hearing to terminate parental rights. It is therefore clear that a court must wait at least one week from publication to proceed to hearing in a termination case to have "full jurisdiction" over a party properly served via publication. In this case, it is undisputed the trial court did not have "full jurisdiction" over father because the hearing was held on the sixth day following completion of service by publication. Without full statutory jurisdiction to proceed "to deal with" the children pursuant to R.C. 2151.414, we are constrained to conclude the trial court committed reversible error in overruling father's objection.

{¶28} One final point on this issue requires attention. PCDJFS asserts that because counsel communicated with father, he had sufficient, constructive notice of the hearing. *See In re Keith Lee P.*, 6th Dist. Lucas No. L-03-1266, 2004-Ohio-1976, ¶8. First of all, in *Lee*, there was no objection based upon lack of notice and the court therefore determined the argument was waived. Moreover, there is no dispute that father had actual notice and service was completed in this case. The error in this matter relates to the timing of the hearing, an issue to which counsel objected. PCDJFS' argument regarding constructive notice does not change our analysis.

7

{¶29} Father next argues the Portage County Legal News was an inappropriate newspaper because it is, in his view, more obscure than The Record Currier, a paper that is more available "for mass circulation." We do not agree. The rule requires publication in a newspaper of general circulation. In an affidavit submitted for proof of publication, an employee of the Portage County Legal News averred it is "a daily newspaper of general circulation in Portage County, Ohio." We conclude the publication in the Portage County Legal News was sufficient to meet the dictates of R.C. 2151.29.

{¶30} Nevertheless, because the court did not have full jurisdiction to proceed and adjudicate father's rights, his assignment of error has merit. We shall next address mother's assignment of error. It provides:

{¶31} "The trial court committed reversible error in holding a hearing on the motion for permanent custody in violation of the time requirements of Juv.R. 18(D)."

{¶32} Mother contends that Juv.R. 18(D) requires that a written motion and notice of a hearing shall be served not later than seven days before the time specified for the hearing. In this matter, she maintains, the trial court found the parties had received notice of the permanent custody hearing in accordance with the law, but erroneously proceeded to hold the permanent custody hearing when service by publication on father had been completed less than seven days prior to the hearing. She claims the trial court's violation of Juv.R. 18(D) is reversible error.

{¶33} As already discussed, R.C. 2151.29 governs service by publication in termination cases. Still, mother, like father, is alleging error in the trial court's proceeding to hearing in father's absence. An initial question of standing must be addressed. "In general, an appealing party may complain of an error committed against a non-appealing

8

party when the error is prejudicial to the rights of the appealing party." *In re. A.M.*, 9th Dist. Summit No. 26141, 2012-Ohio-1024. More specifically, an appellant-mother may challenge an alleged service error regarding a non-appealing party only when she has demonstrated that she herself has been prejudiced by the alleged error. *Id.*

{¶34} Mother does not claim service or notice was defective as it relates to her. To the contrary, mother was at the hearing and presented evidence on her behalf. Although she joined father's objection, the service by publication was only necessary to proceed against father. As such, mother does not claim the court did not have "full jurisdiction" over her. If mother believed that father's presence was necessary to avoid prejudice to her parental rights, she could have proffered her position at the hearing. She did not do so and does not make this argument on appeal. Instead, she claims she suffered prejudice because the trial court's judgment void ab initio. We do not agree.

{¶35} Mother cites *In re R.P.*, 9th Dist. Summit No. 26271-Ohio-4799, in support of her position that the trial court's judgment is void. The court in *R.P.* stated:

> {¶36} "The jurisdiction of the juvenile court does not attach until notice of the proceedings has been provided to the parties." *In re Miller,* 33 Ohio App.3d 224, 225-226 (8th Dist.1986). Parents are parties to custody proceedings and must, therefore, be served. Loc.R. 6.02 of the Court of Common Pleas of Summit County, Juvenile Division; Juv.R. 2(Y). A lack of service of summons will render a custody order invalid and void ab initio. *Williams v. Williams,* 44 Ohio St.2d 28, 31 (1975); *In re B.P.H.,* 12th Dist. No. CA2006-04-090, 2007-Ohio-1366, ¶14. Accordingly, a judgment rendered without proper service is a nullity and void. *Maryhew v. Yova,* 11 Ohio St.3d 154, 156 (1984); *Lincoln Tavern, Inc. v. Snader,* 165 Ohio St. 61, 64 (1956); *CompuServe, Inc. v. Trionfo,* 91 Ohio App.3d 157, 161 (10th Dist.1993).

> {¶37} With few exceptions inapplicable here, when the residence of a party is unknown, service by publication - whether by newspaper or posting and mail - is required. Juv.R. 16(A); Loc.R. 6.03(A) of the Court of Common Pleas of Summit County, Juvenile Division.

9

Because "[s]ervice by publication is a method of last resort; [ ] the requirements of Juv.R. 16(A) are mandatory and shall be strictly enforced." *In re Miller,* 33 Ohio App.3d 224, 226 [(8th Dist.1986)]. *See also Anstaett v. Benjamin,* 1st Dist. No. C-010376, 2002-Ohio-7339, ¶14, citing *Moor v. Parsons* 98 Ohio St. 233, 238 (1918). *In re R.P.*, *supra*, at ¶10-11.

{¶38} In this case, notice and service on both parties was completed in accordance with the governing law. Thus, mother's assertion that the trial court's order is void lacks merit.

{¶39} Because the trial court could properly proceed against mother and mother has failed to demonstrate how she was prejudiced by the trial court's failure to wait at least one week after father was properly served by publication, we conclude she does not have standing to challenge the error which compromised father's statutory right.

{¶40} Mother's assignment of error lacks merit.

{¶41} For the reasons discussed in this opinion, the judgment of the Portage County Court of Common Pleas, Juvenile Division, is affirmed, as it relates to mother. The judgment is reversed and remanded for further proceedings, as it relates to father.

THOMAS R. WRIGHT, P.J.,

TIMOTHY P. CANNON, J.,

concur.

10